UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JOCLYN RICHARDS,                           :
                                           :
               Plaintiff,         :     **MEMORANDUM AND ORDER**
                                           :     05 CV 5986 (DLI) (LB)
        -against-                         :
                                           :
NYC DEPT. OF HOMELESS SERVICES,            :
                                           :
               Defendant.         :
-------------------------------------------------------X

**DORA L. IRIZARRY, United States District Judge**:

      Plaintiff, a former employee of Defendant New York City Department of Homeless Services, filed the instant action alleging discrimination on the basis of sex and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.* ("Title VII"), and related state law. Plaintiff filed the complaint and the amended complaint *pro se*, and subsequently retained counsel. Defendant filed the instant motion, seeking summary judgment on all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth more fully below, Defendant's motion is granted in its entirety.

**BACKGROUND**

**I.     Plaintiff's Employment History**

      The following facts are undisputed or, when disputed, it is so indicated or they are taken in a light most favorable to non-moving Plaintiff. Plaintiff began working for Defendant as a Community Assistant on September 5, 1993.[1] (Def.'s 56.1 ¶ 1.) During his tenure with Defendant,

---

      [1]     Plaintiff does not dispute this start date in his counter-statement of fact; however, in his affidavit, Plaintiff states that he worked for Defendant for over twenty years. (Pl. Aff. ¶ 6.)

1

Plaintiff worked at several locations throughout New York City. (Def.'s 56.1 ¶¶ 12-14, 23.) It is undisputed that Plaintiff has an extensive history of disciplinary violations and proceedings.[2] In 1995, a co-worker alleged that Plaintiff sexually harassed her. (Klepfish Decl., Ex. A.) These charges were referred to an investigator at the Equal Employment Opportunity Commission ("EEOC"). There are no further details as to the ultimate resolution of the allegations. (*Id.*)

In 1998, Defendant brought Disciplinary Charges and Specifications against Plaintiff for violations of Defendant's Code of Conduct ("Code"), including excessive absences, tardiness, disorderly behavior, and striking a supervisor. (Klepfish Decl., Ex. B.) Defendant later filed similar charges against Plaintiff, which were combined into one disciplinary proceeding before an Administrative Law Judge ("ALJ"). (Klepfish Decl., Ex. A.) The ALJ found Plaintiff guilty and recommended a thirty-day suspension without pay. (Klepfish Decl., Ex. A.) Plaintiff did not appeal this determination and settled with the company, agreeing to a ten-day suspension without pay. (*Id.*) It appears that Defendant brought additional charges against Plaintiff around this time; however, there is no further information as to the nature of the charges or their ultimate resolution. (*Id.*)

On January 3, 2002, Defendant brought Disciplinary Charges and Specifications against Plaintiff for insubordination, derogation of duties, threatening a supervisor, use of offensive language, intoxication while on duty, sleeping while on duty, and disorderly conduct. (Klepfish Decl., Ex. C.) The conduct giving rise to these charges occurred while Plaintiff worked at the Linden Family Residence. (Klepfish Decl., Ex. D.) On January 8, 2002, while the charges were pending,

---

[2] Plaintiff does not dispute the fact that Defendant brought charges against him or that he was found guilty in subsequent disciplinary proceedings; however, Plaintiff disputes Defendant's motivation, particularly with respect to the charges included in the January 12, 2004 Disciplinary Charges and Specifications.

Defendant transferred Plaintiff from the Linden Family Center to a new work location, Flatlands Family Reception ("Flatlands"). (Klepfish Decl., Ex. G.) On January 29, 2002, Plaintiff appeared before an ALJ, who found him guilty of insubordination and the use of offensive language, but found insufficient evidence for the remaining charges. (*Id.*) The ALJ recommended a fifteen-day suspension without pay. (*Id.*) Plaintiff did not appeal this decision, which was then affirmed by Commissioner Linda Gibbs. (Klepfish Decl., Ex. E.) Defendant suspended Plaintiff without pay from November 12, 2002 to November 26, 2002. (Klepfish Decl., Ex. F.)

During Plaintiff's tenure at the Flatlands, his immediate supervisor, Doret Clarke-Adonri ("Adonri"), and the Flatlands' Director, Ellen Scolnik ("Scolnik") wrote him up on numerous occasions for a variety of violations of the Code.[3] (Klepfish Decl., Ex. J.) The bulk of the allegations occurred in September and November of 2003. (*Id.*) On November 12, 2003, Plaintiff requested a transfer from Flatlands, indicating that the "[l]ocation is causing stress." (Klepfish Decl., Ex. H.) On December 31, 2003, Defendant granted his request, transferring him to the Powers Family Reception, noting that the transfer was granted in conjunction with pending disciplinary proceedings. (Klepfish Decl., Ex. I.) Notably, Plaintiff's transfer request made no mention of sexual harassment. (Klepfish Decl., Ex. H.)

On January 12, 2004, Defendant brought Disciplinary Charges and Specifications against Plaintiff for threatening Adonri, insubordination, numerous absences without leave, derogation of duties, use of offensive language, disorderly conduct, improper use of Defendant's facilities, and sleeping while on duty. (Klepfish Decl., Ex. K.) These charges arose out of conduct that occurred

---

[3] As discussed below, Plaintiff assails the legitimacy of these charges, contending that Adonri wrote him up or caused others to do so as Plaintiff would not submit to her sexual advances.

3

in Fall 2003, while Plaintiff worked at Flatlands. (*Id.*) Additional charges were brought against Plaintiff and consolidated with these charges. (Klepfish Decl., Ex. A.) Plaintiff participated in an Informal Conference before an Informal Conference Leader. (Klepfish Decl., Ex. L.) On February 5, 2004, the Informal Conference Leader, recommended that Defendant terminate Plaintiff's employment. (*Id.*) To avoid a formal proceeding before an ALJ, Defendant and Plaintiff signed a settlement dated April 15, 2004 ("Settlement Agreement") in which Plaintiff agreed that he: (i) he violated Defendant's Code of Conduct as charged, (ii) would pay a monetary fine equivalent to thirty days of pay, (iii) would work in probationary capacity for one year, subject to extension for tardiness or absenteeism, and (iv) would be subject to termination for any further Code violations. (Klepfish Decl., Ex. M.)

In early 2005, Defendant initiated an investigation into allegations of excessive absenteeism and tardiness without prior permission. (Klepfish Decl., Ex. R.) The investigation included a review of Plaintiff's time records from May 2004 to August 2005. Plaintiff was on probation during the majority of this period pursuant to the Settlement Agreement. Plaintiff accrued 134 instances of approved and disapproved absences and tardiness, and five instances of abandonment. The investigators interviewed Plaintiff, who was accompanied by a union representative. Plaintiff failed to provide adequate documentation of some of his excuses for his absences. Due to his absences, his probation period was extended to at least October 7, 2005, pursuant to Paragraph 3 of the Settlement Agreement. The investigators recommended termination, which option Defendant exercised on September 23, 2005. (Klepfish Decl., Ex. T.)

## II. Alleged Unlawful Conduct and Procedural History

On February 4, 2004, while disciplinary charges arising out of Plaintiff's tenure at Flatlands were before the Informal Conference Leader (who ultimately recommended his termination), Plaintiff filed a complaint with the New York State Division of Human Rights ("DHR"). (Klepfish Decl., Ex. O.) Plaintiff alleged Adonri had sexually harassed and retaliated against him. (*Id.*) Specifically, he alleged that she touched his buttocks, invaded his personal space, and told him that he needed "a real woman like her." (*Id.*) When he refused to submit to her advances, she allegedly retaliated against him by "writing him up" without cause. (*Id.*) Additionally, he alleged that, after his transfer from her facility to the Powers Family Reception, she "called up [his] new work site and tried to spread unfavorable rumors about [him]." (*Id.*) He stated that the last date upon which any alleged discrimination occurred was January 1, 2004. (*Id.*) The DHR forwarded his complaint to the EEOC for dual filing purposes. (Klepfish Decl., Ex. P.) The DHR conducted an investigation finding that Plaintiff's "disciplinary troubles commenced long before" he began reporting to Adonri. (Klepfish Decl., Ex. Q.) The investigation was "inconclusive" as to whether Plaintiff's allegations were true. Adonri denied plaintiff's allegations. One witness, Nicole Mack, stated that she thought Adonri was "interested in" Plaintiff; whereas, another witness, Quinyanna Watkins provided testimony that disputed this belief. Finally, a third witness, Robert Wiggins, had no knowledge of Adonri making any sexual advances towards Plaintiff. (*Id.*) The investigation found no evidence of retaliation, noting that the "disciplinary citations were specific, well-documented and serious." (*Id.*) The EEOC adopted the investigation, report, and recommendations of the DHR, dismissing Plaintiff's complaint in its entirety. (Klepfish Decl., Ex. U.)

5

On December 23, 2005, Plaintiff filed the instant action, *pro se*. (Compl., Docket Entry No. 1.) Plaintiff filed an amended complaint, *pro se*, on June 16, 2006. (Am. Compl., Docket Entry No. 15.) The court construes the Amended Complaint to allege discrimination on the basis of sex,[4] in the form of adverse employment action, sexual harassment, and retaliation. The court construes the sexual harassment claim to encompass both *quid pro quo* and hostile work environment theories. With respect to sexual harassment, Plaintiff reiterated the allegations contained in his complaint to the DHR, and additionally alleged that Adonri: (i) disapproved of time he claimed he worked, (ii) denied him overtime, (iii) repeatedly wrote him up without cause, (iv) assigned him the least favorable schedule, and (v) assigned him the least favorable tasks, including cleaning the bathrooms. Ultimately, Plaintiff retained counsel. (*See* Notice of Appearance, Docket Entry No 19.) At the conclusion of discovery, Defendant filed the instant motion, seeking summary judgment in its favor on every claim. Plaintiff opposes the motion.

## DISCUSSION

### I.  Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). "When opposing parties

---

[4]  Plaintiff briefly notes that he was subject to discrimination on the basis of race. (Pl. Opp. 1.) Neither of the parties briefed race-based discrimination and Plaintiff provided no facts in support of such a claim. Moreover, the amended complaint alleges discrimination on the basis sex alone. The court finds no reason to address race-based discrimination.

6

tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Res. Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

The Second Circuit has recognized that courts must be cautious when granting summary judgment in employment discrimination cases because the employer's intent is frequently at issue. *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). However, summary judgment may still be appropriate "even in the fact-intensive context of discrimination cases." *Abdu Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). To defeat a motion for summary judgment, however, the nonmoving party "must provide more than conclusory allegations of discrimination." *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997). There is no genuine issue of material fact for trial unless sufficient evidence in the record exists favoring the party opposing summary judgment to support a jury verdict in that party's favor. *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. (internal citations omitted).

7

## II.     Application

### A.     Discrimination

Under Title VII, it is "an unlawful employment practice for an . . . employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2007). To prevail against a motion for summary judgment, a plaintiff alleging discrimination on the basis of sex must establish a *prima facie* case, by demonstrating: (i) she is a member of a protected class, (ii) her job performance was satisfactory, (iii) she suffered an adverse employment action, and (iv) the action occurred under conditions giving rise to an inference of discrimination. *See, e.g.*, *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006).

In the instant action, Plaintiff cannot establish his *prima facie* case, as he cannot establish that his performance was satisfactory. During his tenure with Defendant, Plaintiff habitually violated Defendant's Code of Conduct. Defendant brought eight disciplinary proceedings against him, during which he was represented by his union. The evidence demonstrates that nearly all of these charges resulted in sanctions against Plaintiff and that Plaintiff did not contest the findings of the ALJs or the penalties assessed. After Plaintiff barely escaped termination in 2004, he was placed on probation, during which he was absent or tardy 134 times. Further, when asked to justify his absences, Plaintiff failed to provide proper documentation of the excuses he provided Defendant. Regardless of the motivation behind the charges contained in the January 12, 2004 Disciplinary Charges and Specifications, it is important to note that the DHR found those charges well supported. Moreover, even those charges are ignored, Plaintiff's employment history, on the whole, indicates that he was a problematic, poor performing employee. No reasonable trier of fact would find that

8

Plaintiff established this element of his *prima facie* case; thus, the court grants summary judgment in Defendant's favor on this claim.

    **B.**    **Sexual Harassment**

The court construes the complaint to allege sex discrimination in the form of "hostile work environment" and "*quid pro quo*" sexual harassment. "Although [these] terms . . . do not appear in the text of Title VII, they are useful to distinguish between cases involving a threat which is carried out and offensive conduct in general." *See Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir. 2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753 (1998) (internal quotation marks omitted). "The distinction between the two forms of sexual harassment serves to instruct that Title VII is violated by either explicit or constructive alterations in the terms or conditions of employment and to explain [that] the latter must be severe or pervasive." *Mormol*, 364 F.3d at 57.

    **1.**    ***Quid Pro Quo* Sexual Harassment**

"*Quid pro quo* harassment occurs when submission to or rejection of [improper sexual] conduct by an individual is used as the basis for employment decisions affecting such individual." *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir. 1994). To state a *quid pro quo* claim, a plaintiff must demonstrate "a 'tangible employment action,' i.e., that an 'explicit . . . alteration[] in the terms or conditions of employment' resulted from her refusal to submit to . . . sexual advances." *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 604 (2d Cir. 2006). Courts have interpreted "tangible employment action" to include "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id*.

In the instant action, there are no allegations of a failure to hire or promote Plaintiff or any change in his benefits. There is no evidence of an unfavorable transfer or reassignment. The only transfer to occur, made at Plaintiff's request, occurred while disciplinary proceedings were pending. Moreover, once transferred, Plaintiff received the same pay rate and title he had at Flatlands. (Klepfish Decl., Ex. V.) There is no causal relationship between Plaintiff's termination and his refusal to submit to Adonri's alleged sexual advances. The undisputed evidence shows that Plaintiff missed 134 days of work while on probation and that he failed to produce evidence to support the excuses he provided Defendant for his absences. Plaintiff's conclusory allegation that Defendant was "on a witchhunt" does not establish a causal relationship between his purported rejection of Adonri's alleged advances and his termination. Thus, Plaintiff's termination was not a tangible employment action taken against him for rejecting Adonri's sexual advances. *See Clarke v. Mount Sinai Hosp.*, 05-CV-566 (CBA) (LB), 2007 WL 2816198, *8 (E.D.N.Y. Jul. 18, 2007) ("[W]ithout some evidence of a causal connection between the alleged sexual harassment and [plaintiff's] termination, the plaintiff's *quid pro quo* sexual harassment claim must be dismissed.") (internal quotation marks omitted). The remaining allegations are either unsupported or not considered tangible employment action. The court grants summary judgment in Defendant's favor on Plaintiff's claim that he was discriminated against on the basis of his sex.

### 2. Hostile Work Environment Sexual Harassment

#### a. Legal Standards

Title VII protects employees from "discriminatorily hostile" or "abusive" work environments. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted). A work environment is "discriminatorily hostile" when (1) "the workplace is permeated with discriminatory intimidation,

ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *id.* (internal quotation marks and citations omitted), and (2) "a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Schwapp v. Avon*, 118 F. 3d 106, 110 (2d Cir. 1997). The harassment must be "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse," and the victim must also subjectively perceive the environment as abusive. *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 439, 436 (2d Cir. 1999) (citation omitted). Furthermore, the hostility must arise from the plaintiff's membership in a protected class. *Forts v. City of N.Y. Dep't of Corr.*, No. 00 Civ.1716 (LTS) (FM), 2003 WL 21279439, *4 (S.D.N.Y. June 4, 2003) ("An environment that would be equally harsh for all workers, or that arises from personal animosity, is not actionable under the civil rights statutes.") (citing *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)). A plaintiff must demonstrate a series of sufficiently continuous and concerted incidents that altered the conditions of his or her working environment; however, even a single incident may suffice if the incident was "extraordinarily severe." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (citation omitted). The factors the court must consider include:

> (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted.

*Richardson*, 180 F.3d at 437 (internal quotation marks and citations omitted). The court must consider the factors cumulatively to achieve a realistic view of the workplace. *Id.*; *Cruz*, 202 F.3d at 570. The question is a "mixed question of law and fact," and summary judgment is only

appropriate "where application of the law to those undisputed facts will reasonably support only one ultimate conclusion." *Richardson*, 180 F.3d at 437.

### b. Application

Plaintiff alleges that Adonri: (I) told him that he needed a "real woman," (ii) touched his buttocks twice, (iii) came in close physical proximity to him on several occasions, and (iv) assigned him unfavorable tasks, such as bathroom cleaning. Plaintiff also asserts that at least one other co-worker knew that Adonri was "interested in him." This conduct is primarily sporadic, and with the exception of the alleged buttocks touching, sex-neutral. The conduct was not physically threatening, and other than the buttocks touching, cannot be described as humiliating. There are no indications that this conduct interfered with his ability to work. In his transfer request, which was filed after he received what one could reasonably interpret as notice of charges that would lead to termination, Plaintiff indicated only that his work situation was stressful. Even after he was transferred, he never complained to Defendant about the alleged sexual harassment he suffered while at Flatlands. Further, there is no evidence that Plaintiff sought psychiatric treatment or that he suffered psychological harm. While such harm is not required, it is relevant to "whether the plaintiff actually found the environment abusive. *See Harris*, 510 U.S. at 22-23.

None of these incidents standing alone are severe enough to establish a hostile work environment. Moreover, no reasonable trier of fact would find that the allegations, taken as a whole, were so severe and pervasive as to rise to the level of a hostile work environment. *See Durant v. A.C.S. State & Local Sols. Inc.*, 460 F. Supp. 2d 492, 497-98 (S.D.N.Y. 2006) (granting summary judgment in defendant's favor and holding that offensive jokes, a comment by a supervisor regarding her sex life, and two requests for sex did not rise to the level of a hostile work environment);

*Godineaux v. LaGuardia Airport Marriott Hotel*, 460 F. Supp. 2d 413, 421-23 (E.D.N.Y. 2006) (granting summary judgment in defendant's favor and holding that repeated "hissing" at plaintiff, stray anatomy-related comments, stray sexually suggestive comments and gestures, one request for sex, and one attempt at a kiss did not rise to the level of a hostile work environment).

    **C.    Retaliation**

        **1.    Legal Standards**

Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e -3(a). To determine whether summary judgment is appropriate in a Title VII retaliation claim, courts apply the three-part burden shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of proving a *prima facie* case of retaliation. *Id*. The defendant may rebut by articulating a legitimate, nondiscriminatory reason for its adverse employment action. *Id.* The defendant's burden at this stage is merely one of production, not persuasion. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993). However, once the defendant meets this burden, "[t]he presumption of [retaliation] . . . drops out of the picture." *Id.* at 510-11 (internal quotation marks and citation omitted). The burden shifts back to the plaintiff to present sufficient evidence to permit a rational finder of fact to infer that the defendant's proffered reason is a pretext and that the employment decision was motivated by unlawful discrimination. *See Stern v. Trs. of Columbia Univ. in the City of N.Y.,* 131 F.3d 305, 312 (2d Cir. 1997).

13

The plaintiff's burden of proof at the *prima facie* stage of a summary judgment motion is *de minimus*. *See Bennett v. Watson Wyatt & Co.,* 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001). However, the employee must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive. *See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 204 (2d Cir. 1995). To establish a *prima facie* case, the employee must demonstrate: (1) participation in a protected activity known to the defendant; (2) an employment action detrimental to the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *See Hunter v. St. Francis Hosp.,* 281 F. Supp. 2d 534, 546-47 (E.D.N.Y. 2003) (citing *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir. 1998)). The adverse employment action must be one that a reasonable employee would find materially adverse; *i.e.*, "it might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Sante Fe Ry. Co.*, 548 U.S. 53, 68 (2006). Causation may be established directly or indirectly by, for example, temporal proximity. *Hunter*, 281 F. Supp. 2d at 547.

### 2. Application

Plaintiff engaged in protected activity on February 2, 2004, when he filed his compliant with the DHR. The DHR's investigation placed Defendant on notice of Plaintiff's protected activity. Defendant terminated Plaintiff on September 23, 2005. Plaintiff has presented no proof as to whether the individuals who made the decision to terminate him knew of his protected activity. It can be inferred that Adonri and other employees at Flatlands knew of the DHR complaint, as they met with DHR investigators; however, there is no evidence that Plaintiff's supervisors at the Powers Family Residence, the individuals who investigated Plaintiff's absenteeism, or the individuals who ultimately terminated him knew of his complaint to the DHR. Plaintiff cannot rely on temporal

proximity to establish causation as he was terminated more than a year and a half after filing his complaint. *See Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation."). Thus, Plaintiff failed to establish his *prima facie* case.

Moreover, Defendant set forth a legitimate, non-discriminatory reason for terminating Plaintiff—his habitual violations of the Code. As set forth above, the undisputed evidence demonstrates that Plaintiff had a history of violating Defendant's Code, which ultimately led to his termination. Plaintiff's conclusory statements of discriminatory animus fail to establish that the reason for his termination—his poor performance—was mere pretext. No reasonable trier of fact would find otherwise; thus, the court grants summary judgment in Defendant's favor on the retaliation claim. *See Godineaux v. LaGuardia Airport Marriott Hotel*, 460 F. Supp. 2d 413, 424 (E.D.N.Y. 2006) (granting summary judgment in defendant's favor as plaintiff, who had a history of disciplinary violations, failed to show that defendant's reason for termination was pretext).

**D.     Supplemental State and City Law Claims**

Plaintiff's federal claims do not survive summary judgment; thus, the court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3).

**CONCLUSION**

For the reasons set forth above, Defendant's motion for summary judgment is granted in its entirety. This case is hereby closed as no further action is necessary.

SO ORDERED.

Dated: Brooklyn, New York
       March 15, 2009

/s/
Dora L. Irizarry
United States District Judge
